**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 1, 2024**

# In the Court of Appeals of Georgia

A24A0033. P&J BEVERAGE CORPORATION v. THE BOTTLE SHOP, LLC.

MERCIER, Chief Judge.

This is not the first appearance of a legal dispute between these two parties before us. In the first action, P&J Beverage Corporation ("P&J") filed a lawsuit against the City of Columbus "seeking a writ of mandamus to prevent Columbus from issuing an alcoholic beverage license to The Bottle Shop, LLC, and then seeking to revoke the license once issued." *Consolidated Govt. of Columbus, Ga. v. P&J Beverage Corp.*, 344 Ga. App. 482, 482-483 (810 SE2d 640) (2018) (footnote omitted) (physical precedent only). P&J sought the writ of mandamus, arguing that The Bottle Shop's proposed location was within 600 feet of The Growing Room, a for-profit daycare facility, which P&J argued was a "school." Id. at 483. Therefore, P&J claimed that the

proposed location for The Bottle Shop would violate a provision of Columbus's city ordinances which prohibited the issuances of liquor licenses to establishments within 600 feet of a school. Id.

After all of the parties, including The Bottle Shop, which had intervened in the action, filed motions for summary judgment, the trial court granted P&J's motion, ordering that Columbus declare The Bottle Shop's license "improperly issued, and . . . treated as invalid from the outset, and shall not grant authority to any person to operate any business using said license." *Consolidated Govt. of Columbus, Ga.*, 344 Ga. App. at 483 (punctuation omitted). Finding that the trial court erred by granting a writ of mandamus and injunctive relief, we reversed the trial court. Id. at 487 (1)-(2).

Thereafter, The Bottle Shop filed a lawsuit against P&J, alleging wrongful injunction, malicious abuse of process, and seeking attorney fees and punitive damages.[1] The matter proceeded to trial, and the jury awarded The Bottle Shop $175,451.51 in actual damages, along with $98,050 in attorney fees and $250,000 in

---

[1] While the underlying action was proceeding, P&J filed an application for interlocutory appeal of an order vacating a prior order granting a motion to transfer from a state court to superior court. See *P&J Beverage Corporation d/b/a Forrest Road Package Store v. The Bottle Shop, LLC*, A22I0082 (2021). We denied the application. Id.

punitive damages.[2] After the trial court denied P&J's motion for a judgment notwithstanding the verdict or new trial, P&J filed this appeal. P&J alleges that the trial court erred by denying its motion for directed verdict and motion for judgment notwithstanding the verdict on The Bottle Shop's claims for abusive litigation, attorney fees, and punitive damages. Further, P&J argues that The Bottle Shop's counsel gave an improper closing argument and that the trial court erred in its jury charge. For the following reasons, we affirm.

1. P&J argues that the trial court erred by denying its motion for directed verdict and subsequent motion for judgment notwithstanding the verdict on all of The Bottle Shop's claims. In our review of a denial of a motion for judgment notwithstanding the verdict or a denial of a motion for directed verdict, we "determine whether there is any evidence to support the jury's verdict." *Patterson-Fowlkes v. Chancey*, 291 Ga. 601, 602 (732 SE2d 252) (2012). "In so doing, this Court must construe the evidence in a light most favorable to the prevailing party in the court below." Id.

---

[2] The jury awarded $300,000 in punitive damages, but the trial court lowered the award to $250,000. See OCGA § 51-12-5.1 (g). The jury awarded $175,471.51 in actual damages but the trial court lowered the amount to $175,451.51.

(a) P&J claims that the trial court erred by denying its motions regarding The Bottle Shop's abusive litigation claim. Specifically, P&J contends that The Bottle Shop failed to provide adequate written notice, pursuant to the requirements of OCGA § 51-7-84, and that P&J acted in good faith and received a final order in its favor.

OCGA § 51-7-84 (a) provides that

> [a]s a condition precedent to any claim for abusive litigation, the person injured by such act shall give written notice by registered or certified mail or statutory overnight delivery or some other means evidencing receipt by the addressee to any person against whom such injured person intends to assert a claim for abusive litigation and shall thereby give the person against whom an abusive litigation claim is contemplated an opportunity to voluntarily withdraw, abandon, discontinue, or dismiss the civil proceeding, claim, defense, motion, appeal, civil process, or other position. Such notice shall identify the civil proceeding, claim, defense, motion, appeal, civil process, or other position which the injured person claims constitutes abusive litigation.

P&J does not contend that it did not receive written notice. Rather, P&J argues that the notice was deficient.

On March 26, 2017, after the trial court had issued the injunction, counsel for The Bottle Shop sent an email to counsel for P&J stating that, if The Bottle Shop won on appeal, it would assert a wrongful injunction claim and seek damages. Specifically, the email stated that they "wanted to discuss . . . whether P&J will agree to a stay of relief against The Bottle Shop . . . pending the ruling of the appellate court." Further, the correspondence stated: "If the Defendants win on appeal but the Bottle Shop [is] shut down in the interim, The Bottle Shop will assert a damages claim against P&J for wrongful injunction for the time that The Bottle Shop is shut down. P&J can keep that from being an issue by consenting to a stay of the Court's Order and waiting on the Appellate ruling." P&J's owner testified that she rejected the offer,[3] and following this Court's reversal of the injunction, The Bottle Shop filed the underlying lawsuit for abusive litigation.

"The stated purpose of OCGA § 51-7-84 is to give the prospective defendant to the abusive litigation claim an opportunity to voluntarily withdraw his defense or

---

[3] Thereafter, The Bottle Shop and Columbus filed an emergency motion with this Court, seeking to stay the injunctive relief pending appeal. See *The Consolidated Government of Columbus, Georgia, Revenue Division, Occupational Tax Section et al. v. P&J Beverage Corporation d/b/a Forrest Road Package Store*, A17E0043 (April 12, 2017). We granted the motion. Id.

position." *Owens v. Generali-U. S. Branch*, 224 Ga. App. 290, 292 (1) (480 SE2d 863) (1997) (citation and punctuation omitted). Here, the evidence at trial, viewed in the light most favorable to The Bottle Shop, showed that The Bottle Shop gave written notice to P&J, wherein it gave P&J the opportunity to consent to a stay of the injunction, and informed P&J that if it failed to do so The Bottle Shop would seek damages. Accordingly, there was evidence to support the jury's finding that the notice met the statutory requirements of OCGA § 51-7-84. See *Owens*, 224 Ga. App. at 292 (1) (plaintiff's letter was adequate notice under OCGA § 51-7-84 (a) when it notified the defendant's agent of the plaintiff's prospective claim and gave the defendant an opportunity to withdraw its position).

Further, P&J argues that The Bottle Shop's claim was barred as a matter of law because P&J was substantially successful. P&J contends that, because the trial court granted its motion for summary judgment in the first action, The Bottle Shop failed to state a claim for abusive litigation. However, as mentioned previously, this Court reversed the trial court in the first appeal. See *Consolidated Govt. of Columbus Ga.*, 344 Ga. App. at 482. We have previously held that, when a party is successful at every stage of litigation, but then is reversed on appeal, a showing of abusive litigation will

require more than just the appellate reversal. See *Bacon v. Volvo Svc. Center*, 288 Ga. App. 399, 402 (654 SE2d 225) (2007) ("where a plaintiff survives motions for summary judgment and directed verdict and obtains a successful jury verdict, establishing lack of substantial justification requires more than a showing that the verdict was reversed on appeal, such as evidence of fraud").

P&J filed the initial lawsuit against the City of Columbus seeking a restraining order to prevent The Bottle Shop from obtaining a license. And during an interview with a local newspaper, the owner of P&J stated:

> It is a competitor that I do not want. . . . Some of the demographics I will reach here are people who work in uptown and live on the north end. Right now, there is nothing between them and home. I will be the closest place to Alabama and a lot of them are shopping at the Columbus Beverage Superstore. (The Bottle Shop) is a good bit closer to Alabama.

Therefore, there was evidence at trial that P&J was motivated by a desire to deter competition and acted with malice and without substantial justification, pursuant to OCGA § 51-7-81.[4] Accordingly, there was evidence to support The Bottle Shops's

---

[4] "Any person who takes an active part in the initiation, continuation, or procurement of civil proceedings against another shall be liable for abusive litigation if such person acts: (1) With malice; and (2) Without substantial justification." OCGA § 51-7-81.

abusive litigation claim. Compare *LaSonde v. Chase Mortg. Co.*, 259 Ga. App. 772, 774 (2) (577 SE2d 822) (2003) (complete defense to claim for abusive litigation where Chase Mortgage obtained a writ of possession against the plaintiff "and the judgment in that case was not appealed").

(b) P&J argues that the trial court erred by denying its motions for directed verdict and judgment notwithstanding the verdict on The Bottle Shop's claim for attorney fees incorporated in the damages awarded for the abusive litigation claim. P&J argues that attorney fees were not recoverable due to its preliminary success in the underlying action, and that the fees were improperly submitted in a lump sum because The Bottle Shop's appellate fees for abusive litigation were not recoverable.

"An applicant for a restraining order does so at its own peril because if it succeeds in obtaining a restraint that is later determined to have been wrongful, then the wrongfully restrained party may recover actual damages caused by that restraint from the applicant." *Hogan Mgmt. Svcs. v. Martino*, 242 Ga. App. 791, 794 (2) (530 SE2d 508) (2000). Further, under OCGA § 51-7-83 (a), a party who prevails in bringing an abusive litigation action "shall be entitled to all damages allowed by law as proven by the evidence, including costs and expenses of litigation and reasonable

8

attorney's fees." Here, the lawyers for The Bottle Shop testified as to their fees for the original lawsuit, including their hourly rates and their fee amounts, and were cross-examined regarding the fees.

P&J argues that "it is well settled law that claims for appellate proceedings related to abusive or frivolous litigation are not recoverable," but in support it cites only *McGahee v. Rogers*, 280 Ga. 750 (632 SE2d 657) (2006). *McGahee* states that "attorney's fees incurred in connection with appellate proceedings are not recoverable under OCGA § 9-15-14." Id. at 754 (2). The Bottle Shop sought attorney fees under OCGA § 51-7-83 (a). The statutory language of OCGA § 51-7-83 (a) does not exclude appellate proceedings from the recovery for reasonable attorney fees, and P&J has failed to point to any applicable legal authority for such a restriction, and our research has found none. See generally *In re Estate of Zeigler*, 295 Ga. App. 156, 161 (2) (d) (671 SE2d 218) (2008) (statute that provided that a court has the discretion to award a beneficiary "expenses of litigation, including reasonable attorney's fees incurred by the beneficiary in bringing an action on the breach of a trust" allowed for recovery of appellate expenses, including attorney fees) (citation and punctuation omitted). Here, as evidence was provided to support The Bottle Shop's claim for

attorney fees for the initial matter, including their appellate expenses, the trial court did not err in denying P&J's motions for directed verdict and judgment notwithstanding the verdict.

(c) Further, P&J argues that the trial court erred by denying its motions for directed verdict and judgment notwithstanding the verdict on The Bottle Shop's claim for attorney fees under OCGA § 13-6-11. Pursuant to OCGA § 13-6-11, "[t]he expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." "We will affirm an award of attorney fees under OCGA § 13-6-11 if there is any evidence to support it. But an award of attorney fees is unauthorized if appellee failed to prove the actual costs of the attorney and the reasonableness of those costs." *Wimpy v. Martin*, 356 Ga. App. 55, 59 (3) (a) (846 SE2d 230) (2020) (citations and punctuation omitted).

The Bottle Shop's two attorneys testified at the trial regarding their fees for the abusive litigation lawsuit and were subject to cross-examination. Both provided their billing rates and the amount anticipated in trial fees. Further, counsel, and the owner

of The Bottle Shop, testified that the amount of attorney fees was reasonable. "Since this testimony was not objected to or controverted by [P&J], it authorized the jury to find that the fee charged was reasonable in this case." *Whitaker Farms, LLC v. Fitzgerald Fruit Farms, LLC*, 347 Ga. App. 381, 387 (2) (819 SE2d 666) (2018) (citation and punctuation omitted). Compare *Gray v. King*, 270 Ga. App. 855, 858 (2) (b) (608 SE2d 320) (2004) (where no witnesses testified as to the reasonableness of the attorney fees, the award was vacated and remanded). As there was testimony given to support the amounts and reasonableness of attorney fees, and there being some evidence authorizing the award of attorney fees due to P&J being stubbornly litigious, this Court cannot say that the jury erred by awarding attorney fees. See *Whitaker Farms*, 347 Ga. App. at 387 (2).

(d) P&J argues that the trial court erred by denying its motion for directed verdict and motion for judgment notwithstanding the verdict on The Bottle Shop's claim for punitive damages. In support, P&J cites that it "retained counsel who conducted legal research" to support its injunctive action.

"Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful

11

misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). "[W]hether the conduct required for a punitive damages award is proven by the evidence is left to the factfinder." *Coen v. Aptean, Inc.*, 307 Ga. 826, 830 (2) (b) (838 SE2d 860) (2020) (punctuation omitted).

Here, as stated above, there was evidence that P&J instituted the injunctive action in order to prevent competition from The Bottle Shop. P&J admitted as much in an interview with local media, and it filed the action against the City of Columbus. There was evidence to support the jury's conclusion that P&J's actions were motivated to harass a competitor and accordingly showed wilful misconduct. As such, we will not disturb the jury's award of punitive damages. See generally *Bearoff v. Craton*, 350 Ga. App. 826, 847 (7) (830 SE2d 362) (2019) (given evidence of defendant's willful misconduct, we will not reverse the trier of fact).

2. P&J argues that counsel for The Bottle Shop made an improper statement during closing argument, and the trial court erred by failing to sustain its objection, provide a curative instruction or grant a mistrial.

The trial court bifurcated the trial to include a separate phase on the amount of punitive damages. During the first phase, the jury determined the amount of actual damages suffered from the wrongful injunction and that punitive damages should be awarded. In the second phase, the jury determined the amount of punitive damages and attorney fees. During the closing argument for the second phase of the trial, counsel for The Bottle Shop argued that the owner of P&J "conveniently forg[o]t" the amount the company made in revenue for the proceeding year, so counsel said he was "going to guess $3 million because that's the approximate amount. . . ." Counsel for P&J objected, and the trial court noted the objection. Thereafter, counsel for The Bottle Shop continued its closing argument stating:

> So I'm just guessing $3 million because that's a comparable amount to The Bottle Shop who only runs one package store. P&J Beverage had two package stores. So if I take $3 million I can determine a daily amount. Well, the result of their actions caused my client to be closed for 109 days the first time and 8 days the second time. That's a total of . . . 117 days.[5]

---

[5] During the second phase of the trial, counsel for The Bottle Shop asked the owner of P&J on cross-examination to testify as to the amount of P&J's revenue, but she was unable to remember the amount. Counsel for The Bottle Shop asked: "You don't know if $3 million, is that too high or too low?" The owner responded: "I do not know the numbers." Of note, while evidence was presented at trial that The Bottle

Counsel for P&J objected again and moved for a mistrial. The trial court denied the motion.

As an initial matter, P&J failed to request a curative instruction, and as such "[w]e will not reverse a trial court for not taking an action that was not requested at trial." *Booker v. Older Americans Council of Middle Ga., Inc.*, 278 Ga. App. 407, 409 (1) (629 SE2d 69) (2006) (citation and punctuation omitted).

As to the denial of a motion for mistrial, we will not reverse a trial court absent a manifest abuse of discretion. *Shaw v. Brannon*, 253 Ga. App. 673, 674 (3) (560 SE2d 289) (2002). "When confronted with an improper closing argument, a trial court may (1) instruct the jury to disregard the argument, (2) rebuke the offending counsel and instruct the jury to disregard his improper argument, or, as a last resort, (3) grant a mistrial." Id. See also OCGA § 17-8-75 (on objection to counsel's statements of prejudicial matters not in evidence, the trial court shall rebuke counsel and instruct the jury "to remove the improper impression from their minds" or order a mistrial).

---

Shop was closed twice due to P&J's actions, the first time for 109 days and the second time for 8 days, due to a prior court ruling P&J was only entitled to recover for lost profits for the second store closure of 8 days.

Here, while the trial court did not comment on the argument, the trial court repeatedly told the jury throughout trial that "what comes from the lawyers is not evidence" and "I again caution you that whatever comes from the lawyers is not evidence[.]" Further, during the jury charge for the second phase of the trial, the trial court stated: "If you have decided to award punitive damages, next you must determine the amount -- the appropriate amount of punitive damages. In doing so, *you should consider all evidence* of . . . the first phase of the trial phase and *any evidence* admitted in the most recent phase of the trial." (emphasis supplied). Here, given that trial counsel for The Bottle Shop stated that the amount of revenue was a "guess," and that the trial court had repeatedly told the jury that trial counsel arguments are not evidence, we cannot say the trial court manifestly abused its discretion by denying P&J's motion for a mistrial or by not sustaining the objection. See id.

3. Finally, P&J argues that the trial court improperly charged the jury, because it charged the jury that "[d]amages must be established by your enlightened conscious [sic] as fair and impartial jurors."

The provided jury charge closely follows the Georgia Suggested Pattern Jury Instruction for punitive damages: "The measure of such damages is your enlightened

15

conscience as an impartial jury . . . ." Suggested Pattern Jury Instructions, Vol. I: Civil Cases (2024), § 66.741. However, the trial court gave the jury charge at issue during the first phase of the trial, when the jury was not to determine the amount of a possible punitive damages award.

"It is well established that a jury charge must be adjusted to the evidence, apt, and a correct statement of the applicable law. But jury charges cannot be construed in isolation. Instead, they must be read and considered as a whole in determining whether the charge contained error." *Curry v. Dept. of Transp.*, 341 Ga. App. 482, 484 (801 SE2d 95) (2017) (citations and punctuation omitted). As the review of an allegedly erroneous jury instruction is a legal question, we owe no deference to the trial court's ruling and apply the "plain legal error" standard of review. Id.

Here, in addition to the "enlightened conscience" charge, the trial court charged the jury:

> If you find from a preponderance of the evidence in this case that the plaintiff suffered injury proximately caused by an act or acts of the defendant, you may then consider the amount of any of those damages. Any damages must be based on some evidence. Damage cannot be merely speculative in nature.

16

A plaintiff who prevails in an action for abusive litigation shall be entitled to all damages allowed by law as proved by the evidence, including the cost and expenses of litigation and reasonable attorney fees. Damages are given as pay or compensation for injury done. Where the law requires one party to pay damages to another, it seeks to see that the damages awarded are fair to both parties. If you believe from a preponderance of the evidence that the plaintiffs are entitled to recover, you should award to the plaintiff such sums as you believe are reasonable and just in this case. . . .

Damages are given as compensation for injury done, and generally the injury is a measure when the damages are of a character to be estimated in money. If the injury is small or mitigating circumstances are strong only nominal damages are given. What would be a proper amount of nominal damages is a question for you to decide under all the facts and circumstances in the case.

When viewed as a whole the charge was neither confusing nor misleading. Moreover, the jury award for the first phase of the trial does not indicate that the jury preemptively awarded punitive damages to The Bottle Shop. Instead, the jury awarded $175,471.51 for actual damages that The Bottle Shop suffered as a result of the wrongful injunction. Evidence was presented at trial that The Bottle Shop lost $19,960.12 in revenue and $10,978 in expenses while the store was closed due to the

17

injunction, and paid $145,533.33 in legal fees regarding the injunction. Further, P&J

has failed to show that it was prejudiced by the trial court's charge. See *Curry*, 341 Ga.

App. at 488. Accordingly, the trial court did not commit reversible error in providing

these instructions.

*Judgment affirmed. Rickman, J., concurs. McFadden, P. J., dissents.*

A24A0033. P & J BEVERAGE CORPORATION v. THE BOTTLE

SHOP, LLC.

MCFADDEN, Presiding Judge, dissenting.

There is a big difference between a losing argument and an abusive one. Eliding that difference is antithetical to the ideals of professionalism and civility.

For that reason, our law permits sanctions for abusive litigation only where specifically authorized by statute. And those statutes circumscribe the grounds on which such sanctions may be imposed. Today's decision rolls over the boundaries set out in the abusive litigation statute, OCGA § 51-7-80 et seq., and in the provision in Title 13, Contract, authorizing awards of the expenses of litigation, OCGA § 13-6-11.

The judgment before us was entered on a claim for wrongful injunction, a claim for abusive litigation, and derivative claims for punitive damages and attorney fees. The trial court made multiple errors, most notably allowing the abusive litigation claim to go to the jury. As a result it is impossible to determine which portions of the lump sums awarded were based on that claim; and we must reverse the judgment as to the abusive litigation claim, vacate all of the damages awarded, and remand for a determination of damages on the wrongful injunction claim.

1. *Abusive litigation claim*

The abusive litigation statute authorizes liability for claims brought "[w]ith malice" and "[w]ithout substantial justification." OCGA § 51-7-81. "Malice" and "substantial justification" are defined terms. OCGA § 51-7-80 (5), 7. Notice of "inten[t] to assert a claim for abusive litigation" is a prerequisite to recovery. OCGA § 51-7-84 (a). "[G]ood faith" and "substantial[] success" are affirmative defenses. OCGA § 51-7-82. "[G]ood faith" is another defined term. OCGA § 51-7-80 (4). The majority rolls over all of those barriers in the course of rejecting P & J's meritorious argument that the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict on The Bottle Shop's abusive litigation claim.

(a) *Notice of intent*

We frequently reverse generic awards of attorney fees for failure to specify the statutory basis for the award.  Similarly, the abusive litigation statute expressly requires notice of a claim under that statute, rather than a generalized claim. OCGA § 51-7-84 (a) requires that the party alleging abusive litigation give written notice to those against whom the claim of abusive litigation is made before bringing suit." *Stapler v. Boling*, 347 Ga. App. 79, 82 (2) (815 SE2d 602) (2018) (citation and punctuation omitted). That code section provides:

2

> As a condition precedent to any claim for abusive litigation, the person injured by such act shall give *written notice* by registered or certified mail or statutory overnight delivery or some other means evidencing receipt by the addressee *to any person against whom such injured person intends to assert a claim for abusive litigation* and shall thereby give the person against whom an abusive litigation claim is contemplated an opportunity to voluntarily withdraw, abandon, discontinue, or dismiss the civil proceeding, claim, defense, motion, appeal, civil process, or other position. Such notice shall identify the civil proceeding, claim, defense, motion, appeal, civil process, or other position which the injured person claims constitutes abusive litigation.

OCGA § 51-7-84 (a) (emphasis added).

Of course no particular language is specified. One might argue that although the operative provision of the statute authorizes liability "for abusive litigation," OCGA § 51-7-81, the use of "claim for abusive litigation" in OCGA § 51-7-84 (a) should be disregarded; and the notice provision should broadly construed to require only a generic notice. But we are not authorized to adopt so broad a construction. "The statutory tort of abusive litigation is in derogation of the common law and its notice provisions are strictly construed in order to accomplish its overriding purpose to give a prospective defendant the chance to change position and avoid liability." *Carroll County Water Auth. v. Bunch*, 240 Ga. App. 533, 534 (523 SE2d 412) (1999) (citation and punctuation omitted).

The Bottle Shop contends, and the trial court found, that it satisfied that notice requirement through an email from its counsel to P & J's counsel. But that email evinced no intent to bring a claim under the abusive litigation statute. It indicated only The Bottle Shop's intent to bring the wrongful injunction claim.

In the email, The Bottle Shop's counsel cited case law concerning a wrongful injunction claim and then stated that if The Bottle Shop prevailed on its appeal of the injunction and was shut down in the interim, it "will assert a damages claim against P & J for wrongful injunction for the time that The Bottle Shop is shut down. P & J can keep that from being an issue by consenting to a stay of the [injunction] and waiting on the Appellate ruling."

While the email plainly informed P & J that The Bottle Shop was contemplating a wrongful injunction claim, it not only omitted any citation to the abusive litigation statute, see OCGA §§ 51-7-80 et seq., it omitted any indication of an intent by The Bottle Shop to also bring a claim for abusive litigation. P & J simply "was not alerted to the possibility of a lawsuit [for abusive litigation] being brought against [it] and thus was not given the notice which the statute requires." *Payne v. Kanes*, 234 Ga. App. 524, 526 (1) (507 SE2d 266) (1998).

The email cannot be read as a notice under the abusive litigation statute without disregarding the circumstances under which it was written. Under those circumstances, a notice under the Abusive Litigation Act would have been audacious and counterproductive. It would have been audacious because P & J had just prevailed in superior court. Indeed, counting authorized ex parte proceedings, P & J had prevailed before three different superior court judges.

And such audacity would have been counterproductive because The Bottle Shop was asking P & J to "consent[] to a stay" pending appeal. The Bottle Shop plausibly warned of a possible "wrongful injunction claim" in support of that relatively modest ask.

So contrary to the majority's holding in Division 1 (a), I "conclude that the [trial] court erred in refusing to [grant P & J's motions for directed verdict and judgment notwithstanding the verdict on the abusive litigation claim] because of the appellee['s] failure to give written notice that (it) intended to sue [P & J] for abusive litigation." *Stapler*, supra at 84 (2) (citation and punctuation omitted).

(b) *Malice and substantial justification*

5

Even if there had been proper notice of the abusive litigation claim, neither The Bottle Shop nor the majority has cited any evidence supporting the essential elements of such a claim. OCGA § 51-7-81 provides: "Any person who takes an active part in the initiation, continuation, or procurement of civil proceedings against another shall be liable for abusive litigation if such person acts: (1) With malice; and (2) Without substantial justification."

Malice is defined as, "acting with ill will or for a wrongful purpose and may be inferred in an action if the party initiated, continued, or procured civil proceedings or process in a harassing manner or used process for a purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based." OCGA § 51-7-80.

"Without substantial justification," when used with reference to any civil proceeding, claim, defense, motion, appeal, or other position, means that such civil proceeding, claim, defense, motion, appeal, or other position is: (A) Frivolous; (B) Groundless in fact or in law; or (C) Vexatious." OCGA § 51-7-80 (7)

For the majority, evidence that "P & J was motivated by a desire to deter competition" is sufficient to establish malice and lack of substantial justification. That

6

reasoning is seductive: P & J's pecuniary motive is far removed from a legislative intent to protect children. But the majority cites no authority to support its reasoning. And that reasoning has no limiting principle. The private practice of law consists largely of invoking statutes and public policy to advance clients' pecuniary interests. P & J rightly argues that it is entitled to seek to force its competitors to "play by the same rules and sell distilled spirits only in authorized locations."

Moreover, P & J succeeded in obtaining an injunction based on its claim that The Bottle Shop was located within 600 feet of a school in violation of a city ordinance. In the prior appeal of that injunction, this court found the claim that the daycare facility in question was a school to be unpersuasive. *Consolidated Govt. of Columbus, Ga. v. P & J Bev. Corp.*, 344 Ga. App. 482, 487 (1) (810 SE2d 640) (2018). But whether the daycare center constituted a school is a close question.

In a similar case involving an alcoholic beverage license that was not cited in our prior opinion, our Supreme Court held that a church kindergarten was a school. See *Risser v. Thomasville*, 248 Ga. 866 (286 SE2d 727) (1982). Of course *Risser* does not compel us to disapprove our 2018 decision. Applying it here would entail extending it to cover children at least a year younger. But the argument for such an extension is

7

far from abusive. Contrary arguments can be marshaled, but more than contrary arguments are required for abusive litigation liability. *Risser* might be distinguished on other grounds, but it is a decision of our Supreme Court and entitled to due consideration.

The claim for an injunction based on an ordinance involving such a close question of law and fact was not so frivolous, groundless, or vexatious that it rose **to** the level of malice and lack of substantial justification under the abusive litigation statute. See OCGA § 51-7-80 (5), (7).

Moreover the bar for imposing liability for abusive litigation is even higher than usual in this case. As noted above P & J had prevailed in superior court, repeatedly. As the majority recognizes, "establishing lack of substantial justification"against a party who has prevailed before the trial court but has been reversed on appeal "requires more than a showing that the verdict was reversed on appeal, such as evidence of fraud." *Bacon v. Volvo Svc. Center*, 288 Ga. App. 399, 402 (654 SE2d 225) (2007).

Fraud is the sole example set out in *Bacon*. The *Bacon* court was construing the abusive litigation statute. "Fraud" does not appear in the text of the abusive litigation

8

statute. So *Bacon* should be read to set the bar higher for imposing abusive litigation liability on a party who prevailed before the trial court but lost on appeal. Nothing in this case approaches fraud.

2. *OCGA § 13-6-11*

OCGA § 13-6-11 provides: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

Here, The Bottle Shop was not entitled to any such fees arising from the issuance of the injunction and the appeal therefrom because it was not the plaintiff in that action. See *Lineberger v. Williams*, 195 Ga. App. 186, 189 (3) (393 SE2d 23) (1990) ("[A]ppellee was the defendant and he was, therefore, not entitled to seek attorney's fees pursuant to OCGA § 13-6-11 for his defense of that claim. Defendants cannot recover attorney's fees against plaintiffs under OCGA § 13-6-11.") (citations and punctuation omitted).

As for the instant case, I see no evidence that P & J has acted in bad faith or been stubbornly litigious in defending itself. So it was entitled to a directed verdict or judgment notwithstanding the verdict on the claim for attorney fees under OCGA § 13-6-11.

3. *Damages*

As discussed above, since the abusive litigation claim should not have gone to the jury due to The Bottle Shop's failure to give notice of its intent to bring such a claim, any award of damages based on that claim cannot stand. The verdict forms, however, award lump sums for actual damages, punitive damages, and attorney fees, without specifying the amounts based on the abusive litigation claim. So it is impossible for us to determine which damages are appropriately supported by some evidence and which are not. See *Birch Prop. Partners v. Simpson*, 364 Ga. App. 315, 319 (1) (874 SE2d 814) (2022) (damages must be reasonable and proven in a manner sufficient to allow the jury to estimate them with reasonable certainty); *Green v. Key Custom Homes*, 302 Ga. App. 800, 802-803 (692 SE2d 56) (2010) ("a jury verdict, after approval by the trial court, and the judgment thereon will not be disturbed on appeal if supported by any evidence, in the absence of any material error of law").

10

Since P & J has not contested its liability for the wrongful injunction claim, the only issues remaining in the case are the amount and types of damages available for that claim. Accordingly, unlike the majority, I would reverse the judgment holding P & J liable for abusive litigation, affirm the judgment to the extent it finds P & J liable for the wrongful injunction claim, vacate all the damages awarded, and remand the case with direction that the issue of damages as to the wrongful injunction claim be determined. See generally *Lyman v. Cellchem Intl.*, 342 Ga. App. 446, 447 (803 SE2d 375) (2017) (given general verdict form, basis for punitive damages award unclear). As the majority notes, "while evidence was presented at trial that The Bottle Shop was closed twice due to P&J's actions, the first time for 109 days and the second time for 8 days, due to a prior court ruling P&J was only entitled to recover for lost profits for the second store closure of 8 days.